IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|                              |   |                          |
|------------------------------|---|--------------------------|
| Alicia T. Healy,             | : |                          |
|                              | : | Case No. 2:22-cv-2074    |
| Plaintiff,                   | : |                          |
|                              | : | Judge Graham             |
| v.                           | : |                          |
|                              | : |                          |
| Officer Edward Chung, et al.,| : | Magistrate Judge Vascura |
|                              | : |                          |
| Defendants.                  | : |                          |

## OPINION & ORDER

This matter is before the Court upon cross motions for summary judgment. Plaintiff Alicia Healy ("Healy") seeks partial summary judgment on certain elements of her Amended Complaint. Doc. 80. Defendants, Officer Edward Chung ("Officer Chung" or "Chung") and the City of Columbus (the "City") (collectively, "Defendants") seek summary judgment on all claims raised in the Amended Complaint. Doc. 79. For the reasons that follow, the Court **DENIES** Healy's motion for partial summary judgment and **GRANTS** Defendants' motion for summary judgment.

## Background

This case arises out of a citation for trespassing. On May 1, 2020, Healy, an African American woman, attended a demonstration outside of the Planned Parenthood Surgical Center (the "Surgical Center") in Whitehall, Ohio. Among a dozen or so demonstrators that day, Healy was a first-timer. Officer Chung, a member of the Columbus Police Department, was working special duty as a security detail for the Surgical Center. While Healy was walking around the building in a "Jericho

Walk," she entered a grassy area of the premises belonging to the Surgical Center. An individual serving as an escort for patients approached Healy and notified her that she was not allowed on the grassy area. The escort alerted Officer Chung, who also observed Healy on the grassy area. Officer Chung mistakenly believed that Healy was a different African American woman who had been warned to stay off the grassy area at a prior demonstration at the Surgical Center. Officer Chung detained and/or arrested Healy until he could verify her identity, after which he released her with a summons to appear in court on a citation of trespass. The charges against Healy were eventually dismissed.

Based on the May 1, 2020, encounter, Healy filed this suit, raising three (3) claims for monetary damages under 42 U.S.C. § 1983. First, Healy seeks relief for the alleged "warrantless, unreasonable and unconstitutional seizure and arrest," in violation of her rights under the Fourth Amendment. Doc. 1, # 10. Second, Healy seeks relief for the alleged "deprivation of her rights to freedom of speech, freedom of assembly, and freedom of religion," under the First Amendment. *Id.* Third, Healy seeks relief for the alleged "discriminatory enforcement actions," in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id* at # 10-11. Healy brings these claims against Officer Chung in his individual and official capacities, and also seeks to hold the City of Columbus liable for these violations pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). Such claims against municipal entities are often referred to as *Monell* claims.

[2]

Defendants argue that summary judgment on all claims is appropriate because, as to Healy's Fourth Amendment claim, Officer Chung's seizure of Healy was constitutionally sound, based on the circumstances known to him at the time. Doc. 79, # 1732. As to Healy's First Amendment claim, Defendants argue that she cannot establish that she was engaged in a protected activity. *Id.* at # 1747-48. As to Healy's Equal Protection claim, Defendants argue that Healy cannot show any similarly situated comparators. *Id.* at # 1747. As to her *Monell* claims against the City, Defendants argue that Healy has failed to "identify the specific policy or policies which allegedly caused her injury." *Id.* at # 1749. Finally, Defendants argue that Officer Chung is entitled to qualified immunity. *Id.* at # 1740-43.

Healy seeks partial summary judgment, focusing primarily on her Fourth Amendment claim and her related theory of *Monell* liability. Specifically, she moves the Court to find that Healy's arrest:

1. Violated her clearly established rights under the Fourth Amendment to the United States Constitution;
2. Was caused by Defendant City of Columbus' failure to train Officer Chung on basic elements of Ohio Trespass law; and
3. Was ratified by the City of Columbus policy-making officials (via testimony and Rule 36 Admissions).

Doc. 80, # 1762. Both parties rely heavily on video evidence, declarations and deposition testimony in the record.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any

[3]

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The standard of review remains the same when reviewing cross-motions for summary judgment versus a motion filed by only one party. *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

[4]

## DISCUSSION

The parties agree that many material facts are undisputed and supported by clear video evidence. To Healy, these facts show that Officer Chung committed an unlawful arrest without probable cause, based on Healy's race, and/or as unlawful retaliation for her constitutionally protected exercise of free speech, and/or in ignorance of Ohio trespass law. To Defendants, these facts show that Healy committed a criminal trespass, Chung witnessed it, and then Chung lawfully detained Healy based on his personal observation of criminal conduct. Indeed, the central issue is whether the circumstances known to Chung justified the seizure of Healy under Ohio trespass law, and so the Court begins there. However, as explained below, the Court ultimately concludes that this central issue poses questions best resolved by a jury.

### I.    Healy's Fourth Amendment Claim.

Healy brings a Fourth Amendment claim under the first claim for relief of her Amended Complaint. She also articulates a *Monell* claim, alleging that the violation of her rights can be culpably traced to the City of Columbus based on an allegedly unlawful policy, custom, or practice. The *Monell* claim is not stated as a separate claim; rather, Healy has alleged each count against all Defendants, which includes the City of Columbus. That said, Healy's theory for *Monell* liability is closely tied to her Fourth Amendment claim.[1] Therefore, the Court will analyze Healy's *Monell* theory in the context of the Fourth Amendment claim.

---

[1] Indeed, Healy's motion for partial summary judgment currently before the Court addresses only her Fourth Amendment claim and her related *Monell* theory. On the other hand, Healy

### A. Summary Judgment is Warranted for Defendants on Healy's *Monell* Claim.

Defendants seek summary judgment on Healy's *Monell* claim, in which she argues that the City of Columbus failed to train its officers in accordance with *State v. Barksdale*, 2 Ohio St. 3d 126, 443 N.E.2d 501 (1983), an Ohio case which discussed how a business' status as open-to-the-public implicates the boundaries of criminal trespass. In *Barksdale*, the Supreme Court of Ohio held that a criminal defendant did not commit a trespass when he entered a car lot and stole items from the cars. *Id.* The Supreme Court observed that "the automobile dealer's tacit invitation extended [to] the general public to visit the proprietor's lot to view the vehicles thereon was a grant of privilege." *Id.* at 128. Therefore, despite the defendant's criminal intentions when he entered the lot, the entry itself was lawful. *Id.*

Healy's reliance on *Barksdale* is twofold. First, Healy argues that Chung improperly seized her because "based on *Barksdale*," she had a legal privilege to walk across the grassy lot "until she was asked to leave." Doc. 80, # 1774. Second, Healy argues that Chung's failure to recognize her privilege can be traced to his inadequate training, thus making the City of Columbus liable pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). On each track, Healy's reliance on *Barksdale* is misplaced.

---

does not appear to offer specific argument as to municipal liability for her First Amendment and Equal Protection claims, presumably on the theory that any such liability would derive from the same policy on which Healy focuses her argument.

As to Healy's Fourth Amendment claim, Defendants argue that Chung reasonably believed Healy had received sufficient notice, based on the circumstances, and that the limited operations of the surgical center are easily distinguishable from the car lot in *Barksdale*.[2] Indeed, Healy does not dispute the fact that she *was* asked to leave—i.e., to the extent she had any *Barksdale* privilege, it was revoked. Furthermore, Healy's contention that she could enter the grassy lot based on *Barksdale* (i.e., that the Surgical Center was open to the public and thus she had privilege) is inconsistent with her testimony which demonstrates that she *knew* not to enter the Surgical Center's property,[3] but simply believed that the grassy lot was not part of that property.

More importantly, *Barksdale* does not change Chung's calculus for determining whether to seize an individual over suspicion of trespass. Healy repeatedly refers to Chung's ignorance of the "*Barksdale* principle," i.e., "that a

---

[2] In contrast to a car lot which "typically has no fencing, signs, or security," Defendants describe the Surgical Center as follows: "'No Trespassing signs surround the building… the facility does not provide any services to walk-in patients… Every patient must have an appointment… Prospective patients cannot even schedule their appointments on the premises… Special duty police officers patrol the exterior to keep non-patients out of the parking lot and off the grounds… there is a second layer of security—a locked door from the vestibule with an intercom system for entry—which only valid patients can enter." Doc. 79, # 1738.

[3] *See, e.g.*, doc. 66-1, 31:3-4 (describing where demonstrators gather as "in the front and then **you can kind of be on the side**.") (emphasis supplied); *id.* at 32:1-5 ("So there's a fence that separates. So you have the parking lot and then you have the fence and then you have the sidewalk counselor outside that sidewalk outside of that fence."); *id.* at 59:21-23 ("with the fence stop where it stopped, I guess my thoughts was that that property from there was theirs."); *id.* at 62:2-4 (explaining that she would not have crossed the grassy lot if she knew it belonged to the Surgical Center). *See also* David Daubenmire Dep., doc. 65-1, 13:6-12 ("Because you knew to step across that line would be trespassing, so you didn't do it. You could talk to them on the sidewalk… you could try to catch them in the driveway. **But we all knew that you didn't go on the Planned Parenthood property**.") (emphasis supplied).

business open to the public extends a 'tacit invitation' (a privilege) to members of the public to enter the property." Doc. 80, # 1770. But Healy does not contend that this is an irrevocable privilege; rather, she acknowledges that her privilege persisted "until she was asked to leave." *Id.* at # 1774. But as much is baked into Chung's assessment of whether someone committed criminal trespass. In sum, the question (for Chung) remains the same with or without *Barksdale*, which is whether Healy had notice that she was not allowed to enter the property when she did it—i.e., whether she did so knowingly. *See* doc. 61-1, 66:6-12 (Chung describing process of warning trespasser before issuing summons); *cf. Logsdon v. Hains*, 492 F.3d 334, 342 (6th Cir. 2007) ("Ohio courts construe the lack-of-privilege requirement as an element of the offense of criminal trespass, and not an affirmative defense.").

Nor does *Barksdale* change the related issue before the Court as to whether Chung reasonably believed that Healy had sufficient notice. What Healy calls the "*Barksdale* principle" simply goes to the *mens rea* required by the cited statute for criminal trespass.[4] In the Court's view, the degree to which the Surgical Center was open to the public is simply a disputed fact in the totality-of-the-circumstances(-within-Chung's-knowledge) bucket.

---

[4] To the extent there exists a "*Barksdale* principle" of precedential value, it is that a privileged entry onto someone else's property does not transform into a trespass after-the-fact by virtue of the privilege-holder's criminal conduct on the property. 2 Ohio St. 3d 126, 443 N.E.2d 501 (1983). The Supreme Court of Ohio was specifically considering whether the trespass element of a breaking-and-entering offense was fulfilled despite the defendant's apparently lawful entry onto the property (a car lot during business hours). *Id.* In sum, *Barksdale* is not uniquely relevant here except to underscore the "knowingly" element of the offense of trespass.

As to her *Monell* claim, Healy cites to deposition testimony and responses to interrogatories to argue that "none of the five police witnesses in this case were trained on the *Barksdale* privilege." Doc. 87, # 1841. But the Court agrees with the Defendants that the evidence shows that "the Columbus Division of Police correctly instructs its officers as to the law governing trespassers in open commercial establishments, even if the officers do not recognize the relevant Supreme Court opinions by name." Doc. 85, # 1827. Indeed, Healy herself quotes Rule 30(b)(6) witness Jacob Day stating "[I]f it's a business that's open to the public and someone just walks in… then there would not be an issue with criminal trespass." Doc. 87, # 1841. This quotation—from an officer testifying on behalf of the city—thoroughly vitiates Healy's allegation of widespread municipal ignorance of what she calls the "*Barksdale* principal." Because Healy bases her *Monell* theory entirely on that allegation, the Court **GRANTS** Defendants' motion as to that theory.[5]

## B. Genuine Disputes of Material Fact Preclude Summary Judgment as to Whether Officer Chung Lawfully Seized Healy.

To prevail on a Fourth Amendment unlawful arrest claim under 42 U.S.C. § 1983, Healy must show that she was arrested without probable cause. *Fridley v.*

---

[5] As noted supra, Healy does not state a standalone *Monell* claim, and does not offer any other argument regarding municipal liability for her First Amendment and Equal Protection claims. Therefore, judgment is warranted for the City of Columbus on all three (3) claims in the Amended Complaint. To the extent Healy is stating a claim against Officer Chung in his official capacity, this conclusion extends to grant summary judgment on the same. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, "[a] suit against an individual in his official capacity is the equivalent of a suit against [that] governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)).

[9]

*Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause exists where, based on the facts and circumstances known to the arresting officer, "there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Id.* (citing *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir.2001)).

Officer Chung cited Healy for criminal trespass under § 2311.21(A)(1) of the City of Columbus' municipal code, which provides:

> (A) No person, without privilege to do so, shall do any of the following:
> (1) Knowingly enter or remain on the land or premises of another;

Columbus, Ohio, Code of Ordinances § 2311.21. Healy's argument is that Officer Chung did not have probable cause because Healy, attending that day for her first time, "had no idea who owned the lot, and was never warned by anyone," and thus lacked the requisite *mens rea* for the offense. Doc. 87, # 1835. Defendants point out that Healy's assertions "might be relevant to her defense against the criminal charges," but that Chung "needed only a reasonable basis to believe that she had knowingly trespassed." Doc. 79, # 1734.

Defendants summarize the facts known to Officer Chung, arguing that the circumstances sufficiently established a reasonable basis for Healy to be seized: "The grassy lot belonged to Planned Parenthood. Healy was not a patient at the facility. There was a No Trespassing sign on the west wall of the facility. A volunteer from Planned Parenthood warned her that she was trespassing. Officer Chung personally saw her while she was still on the grass." Doc. 85, # 1819.

[10]

The video evidence appears to support this summary, to an extent. Specifically, Defendants have submitted two exhibits from Healy's deposition. Exhibit 006 is a 26-second video appearing to have been recorded with a cell phone camera from the sidewalk where the demonstrators were located. The video shows Healy walking on the grassy lot toward the camera. She is approached by a volunteer escort, later identified as Carolyn Heck ("Heck"), who tells her that she cannot be on the grass.[6] Heck appears to turn and address someone off-camera (understood to be Officer Chung). Though Healy acknowledges Heck, and they appear to exchange some words,[7] Healy continues walking in the same direction as she was before she was approached, until she appears to reach the sidewalk.

A second video shows the same events from a different angle. That video, Exhibit 008 to Healy's deposition, appears to be a compilation of footage from the demonstration. After opening with music over a text graphic which says "COACH Dave LIVE!", the video cuts to more cell phone footage, showing Heck as she approaches Healy. The clip begins with the camera situated near the entrance of the parking lot, viewing the encounter between Heck and Healy through the parking lot at a diagonal angle (relative to the perspective of Exhibit 006), and continues as the person filming moves down the sidewalk toward the same vantage point as Exhibit 006. Both clips end at the point when Healy appears to reach the sidewalk, with Heck returning to the parking lot.

---

[6] What is actually said is inaudible, but Healy does not dispute the substance of the communication. *See* doc. 74, # 1481.
[7] Again, mostly inaudible.

Though Exhibit 006 is just the single brief clip, Exhibit 008 continues with additional clips of footage. The next clip, beginning at 00:28 in Exhibit 008, shows Officer Chung in the parking lot approaching the sidewalk. As he approaches, he appears to point at someone off-camera and then makes a beckoning gesture. He then steps onto the sidewalk and grabs Healy's arm, which is outstretched with her palm toward him, and escorts her a few feet into the parking lot. Though the parties dispute whether Healy was arrested or merely detained, they appear to agree that, at this point, Healy was seized (i.e., detained, at least).

But neither these exhibits nor any others provided to the Court reveal how much time passed between Healy walking through the grassy lot and Officer Chung seizing her, nor what occurred during that interval.[8] Nor do they show Healy's actions before the video clips which start with her already in the middle of the grassy lot.[9] Witness statements establish genuine disputes of material fact surrounding these areas of ambiguity. For example, Heck testified in her deposition that she witnessed Healy walking the opposite direction, "off the sidewalk" (doc. 70-1, 31:13-14) going

---

[8] Healy's response when asked, in her deposition, how much time passed between the end of the first clip and the start of the second clip in Exhibit 008: "It seemed like it happened pretty quickly. I mean, it looks like I was still walking around, so I'm—I'm not sure. Maybe a minute or two. I don't know." Doc. 66-1, 66:14-20.

[9] Notably, under § 2311.21(A)(1), a criminal trespass occurs when the offender (knowingly) *enters* or *remains* on the property of another without privilege. Therefore, if Healy was already in the grassy lot when she learned *for the first time* that it belonged to the Surgical Center, she would not be guilty of trespass under (A)(1) unless she remained on the property or entered the property again. But even if Healy did not remain and never did enter the property again (i.e., is factually innocent of the cited offense), Chung can still prevail by persuading the jury that his contrary belief was reasonable under the circumstances. *See Rayfield v. City of Grand Rapids, Michigan*, 768 F. App'x 495, 506 (6th Cir. 2019) ("[O]fficers are not required to conduct further investigations to disprove possible affirmative defenses or to corroborate a suspect's proclaimed innocence.").

"from Main Street onto the grassy lot" (*id.* at 30:5-6) and that Healy was "walking back and forth" (*id.* at 58:18) on the grassy area. She further testified that "After I warned her and she refused to move, I turned around and walked away… and went to [Officer Chung] and said she's trespassing." *Id.* at 32:3-6.[10] Though these observations are not fully reflected in the video footage—which begins with Healy already in the middle of the grassy lot, moving *toward* Main Street, rather than away from it—neither are they necessarily refuted by the brief clip.[11] Healy, for her part, submitted a declaration, stating, "Contrary to the testimony of Carolyn Heck and Officer Chung, my walk through the grassy lot from the back alley to the Main Street sidewalk was steady and uninterrupted, with no stopping and backtracking (i.e., no back and forth or retracing of my steps)." Doc. 82, # 1795.

---

[10] Among the particular factual ambiguities weighing on this question is the nature of what Heck communicated to Chung, and the sequence of events at that time. Chung's declaration states that Heck approached him while he was seated in his vehicle and "told [him] that a woman was trespassing on Planned Parenthood property." Doc. 79-1, # 1756. When Chung looked up, he saw "a woman trespassing on the grassy area." *Id.* Due to the gaps in the video footage (*see* Exhibit 008 to Healy's deposition), we see Heck turn back toward the parking lot only after Healy exits the grassy area onto the sidewalk, but we do not see Heck cross the parking lot to address Chung, nor how long that takes. Regardless, this timeline suggests that when Chung looked up and saw Healy on the grass, he may have—depending on what Heck communicated to him—understood Healy to have re-entered or to have remained on the grass in spite of Heck's admonition to her.

[11] As illustrated in Heck's deposition:

    Q:    Is it your testimony that at some point she stopped and stood still [in the
          grassy area]?
    A:    At some point, yes… Whether it was on that video or not, but, yes, she did
          stop and stand still.
    Q:    All right. Are you suggesting that you saw her on that grassy area a second
          time?
    A:    Or before that.

Doc. 70-1, 59:7-15.

[13]

In other words, there is a substantial and genuine dispute of material facts, requiring resolution from a factfinding jury. Probable cause is a legal determination—i.e., for the court rather than the jury—only when "the historical facts are undisputed." *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020). The historical facts here are variously disputed, thus precluding the Court from making such a determination without balancing it precariously upon wobbly factual assumptions. Therefore, to the extent the parties' cross motions rely on the issue of probable cause breaking in their favor, they must be denied. This conclusion trickles down and likewise precludes neat resolution of when or whether Officer Chung's seizure of Healy evolved from a detention to an arrest, and the legal significance thereof. Healy's motion seeks summary judgment on three propositions of law, all of which depend on the Court concluding that Chung violated her Fourth Amendment rights. Because the Court cannot so conclude on this record, Healy's motion is **DENIED**. Defendants' motion is **DENIED** to the extent that it relies on the Court concluding that Officer Chung's seizure of Healy was justified. Nevertheless, the Court concludes that Officer Chung is entitled to qualified immunity.

## C. Officer Chung is Entitled to Qualified Immunity.

Would it be apparent to a reasonable officer that Chung's conduct was unlawful in the situation he confronted? *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[I]n the light of pre-existing law the unlawfulness must be apparent," for qualified immunity to fall away). Because the factual disputes do not prevent the Court from answering this question in the negative, neither are they an impediment to the

[14]

Court's determination that Officer Chung is entitled to qualified immunity on Healy's Fourth Amendment claim.

Under the doctrine of qualified immunity, government actors are shielded from civil liability in the performance of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Courts use a two-step inquiry to analyze qualified immunity: (1) whether the government official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In this case, the Court's conclusion above—that factual disputes preclude determination of whether Healy's Fourth Amendment rights were violated—is likewise applicable as to the first step of the qualified immunity theory. And while a finding of a genuine dispute of material fact on the underlying claim will often prevent full adjudication of a corresponding qualified immunity defense, the unique facts of this case enable the Court to find Chung's qualified immunity defense to be intact, valid, and effective. *See Jackson v. Hoylman*, 933 F.2d 401 (6th Cir. 1991) (stating qualified immunity doctrine "allow[s] government officials to perform their

[15]

discretionary duties without constant fear that each time they act they will be forced to defend themselves in a civil suit.").

Healy argues, "in the absence of probable cause to believe that Healy was trespassing… Chung violated clearly established law by arresting her." Doc. 83, # 1812. More specifically, Healy argues that, under clearly established law, Chung could not disregard the potentially exculpatory statements from bystanders explaining that Healy had never been to the Surgical Center before. *Id.* at # 1813 (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305 (6th Cir. 2005)). In support of this argument, Healy cites *Logsdon v. Hains* as a case which clearly established that an officer "may not off-handedly disregard potentially exculpatory information made readily available by witnesses on the scene." 492 F.3d 334, 343 (6th Cir. 2007).

In *Logsdon*, a man demonstrating outside of an abortion clinic was arrested (on public property) for criminal trespass after he had entered the clinic parking lot to retrieve his antiabortion sign which a member of the clinic had removed from a neighboring fence. *Id.* The Sixth Circuit reversed the District Court's dismissal of the plaintiff-demonstrator's ensuing § 1983 action because, under a liberal construction, "there [was] a set of facts consistent with the pleadings in which [d]efendants violated [p]laintiff's Fourth Amendment rights." *Id.* But the defendant officers in *Logsdon* were responding to a call from a member of the clinic reporting the trespass, and the fact that the officers did not personally witness the alleged trespass strongly informed the court's determination that the officers' disregard of the on-scene witnesses—

[16]

among the only apparent sources of information in the absence of officers' firsthand observations—may have violated the Fourth Amendment rights of the plaintiff.

Officer Chung, on the other hand, personally witnessed the apparent trespass. Therefore, the Court finds *Skovgard v. Pedro,* 448 F. App'x 538 (6th Cir. 2011) is the better guide for the instant case. In *Skovgard*, another case involving antiabortion demonstrators being cited for criminal trespass, the plaintiff-demonstrators were arrested for trespassing on a grassy area which the defendant-officers mistakenly believed to be part of the clinic's property, but it was in fact public property. *Id.* However, "unlike in *Logsdon*," the defendant officers in *Skovgard* "personally observed the alleged trespassers in the area believed to be private property." *Id.* at 547. Similarly, here, Chung personally observed Healy on actual private property, believing that she had prior notice that she lacked privilege to be there.

The *Skovgard* court held that the defendant-officers were entitled to qualified immunity despite "failing to further investigate the boundaries of the public right-of-way." *Id.* In the instant case, however, Chung conducted relevant investigation—not as to the property lines, but as to Healy's identity, because Chung (mistakenly) believed Healy was someone else. Though Healy argues that Chung disregarded[12] the statements of bystanders trying to explain Healy's innocence, his attempts to verify Healy's identity were essentially an effort at investigating those statements.[13]

---

[12] In his deposition, Chung testified that he could hear the demonstrators shouting, but did not recall hearing any specific statements. Doc. 61-1, 55:11-13.

[13] The parties do not dispute that Healy stated her name to Officer Chung approximately 1 minute into their encounter, but Chung did not hear it. Doc. 79-1, # 1757. On the other hand, Healy does not dispute that she withheld information that he requested "because [she]

In sum, much like Sixth Circuit concluded as to the defendant-officers in *Skovgard*, and keeping in mind qualified immunity's "ample room for mistaken judgments" (*Johnson v. Moseley*, 790 F.3d at 653), a reasonable person in Officer Chung's position "would not have thought that he was acting unlawfully." *Skovgard*, 448 F. App'x at 547. To the extent that Chung was acting on a mistaken belief as to Healy's identity, the law has not clearly established that a good faith mistake is unlawful and fatal to his qualified immunity, especially when his conduct in response constituted reasonable efforts at dispelling such a mistake. Therefore, Chung is entitled to qualified immunity on Healy's Fourth Amendment claim.

## II.    First Amendment Retaliation.

Defendants argue that summary judgment is warranted on Healy's § 1983 claim alleging a First Amendment violation. In her complaint, Healy alleges that Chung's conduct "constituted retaliation against Healy for the manner and content of her speech." Doc. 53, # 284. To prevail on a claim of First Amendment retaliation, Healy must show: (1) that she was engaged in a constitutionally protected activity; (2) that the Defendants took adverse action against her, causing her to "suffer an injury which would likely chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the adverse action was motivated in part by her constitutionally protected conduct. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Defendants argue that Healy's claim cannot clear the first hurdle because, regardless of the content of her speech, she does not have a constitutional right to

---

believed [she] had done nothing wrong and [she] did not want to share any more personal information with him." Doc. 82, # 1795.

trespass on private property. Doc. 79, # 1748. Defendants point out that Healy did not respond to their argument that she had no constitutional right to trespass on private property, and that the cases she cited regarding First Amendment claims involved public property. Doc. 85, # 1826. Despite the clear allegation of "retaliation" in her complaint, Healy retreats from characterizing her claim as one for retaliation and instead rearticulates her First Amendment claim in the summary judgment briefing as alleging an impermissible regulation of speech in a public forum: "absent the Fourth Amendment violation, [Healy] would have completed the Jericho Walk and continued the peaceful exercise of her First Amendment freedoms." Doc. 83, # 1809.

Healy's desire to avoid the ordinary 3-part retaliation inquiry is understandable, given the obstacles it poses to her claim. She does not respond to Defendants' argument as to the first part, to wit, that she has no constitutionally protected right to trespass. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) ("[W]hether a plaintiff's speech is 'protected' depends on where he is."). While the Court agrees with the Defendants that Healy had no First Amendment right to express herself on private property,[14] it finds that her claim ultimately fails on the second part. Spotting Healy the first factor—that her constitutionally protected activity was speaking on the public sidewalk before and after she entered the grassy area—the Court is not persuaded (and Healy has not attempted to persuade) that

---

[14] The Court departs from the Defendants' position which contends that this finding is dispositive. Defendants have not identified case law in this circuit which requires that a plaintiff alleging First Amendment retaliation show that they were engaged in a protected activity at the moment of the adverse action.

[19]

seizing someone for trespassing on *private* property would deter a person of ordinary firmness from continuing to engage in speaking on *public* property.

Furthermore, Healy spent much of her detention continuing to do what she stated she went to the Surgical Center to do: praying and trying to deter women from having abortions. The video evidence shows Healy continuing to pray in the parking lot while Chung attempts to identify her. This likewise weakens the argument that the adverse action was motivated by her protected conduct. *See also Skovgard*, 448 F. App'x at 548 (no evidence of retaliatory motive where officers encouraged demonstrators to continue demonstration elsewhere). Though Healy points to the fact that other (non-demonstrating) individuals occasionally traversed the grassy area without consequence, many more demonstrators exercised the same *protected* conduct without consequence. Thus, this evidence demonstrates that Chung was in fact motivated by Healy's (apparent) criminal trespass. Healy does not dispute that Chung (mistakenly) believed that Healy had been to the Surgical Center before and had been warned that she could not enter the Surgical Center's property.

Healy's arguments to the contrary are unpersuasive. Despite expressly pleading a retaliation theory in her amended complaint (doc. 53), Healy argues in her opposition brief that "a retaliatory state of mind should not be required." Doc. 83, # 1810. She cites to *Logsdon v. Hains* in support of her theory that the unlawful arrest *itself* violated her First Amendment rights, "which could not be exercised from the back of a police cruiser." *Id.* (citing 492 F.3d 334, 344-46 (6th Cir. 2007)). In *Logsdon*, the Sixth Circuit observed that the defendant-officers "removed [p]laintiff from the

public fora, thereby causing him to cease his protest and counseling." *Id.* But, contrary to Healy's no-retaliation-necessary-theory, the court in *Logsdon* further observed that "Construing [p]laintiff's complaint liberally, [p]laintiff alleges that [d]efendants were **motivated by the content of his speech in removing him from the public forum**, and not by any purported criminal trespass." *Id.* (emphasis supplied). So, *Logsdon* is of no support to Healy's bid to avoid showing retaliatory intent.[15]

Healy also cites *Pouillon v. City of Owosso* for the proposition that, in "a traditional public forum," the government's "regulations of time, place and manner of expression," must be "content neutral" and "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Doc. 83, # 1810 (quoting 206 F.3d 711, 715 (6th Cir. 2000)). This argument is easily disposed of, because the grassy area that was regulated was not a public forum, traditionally or otherwise.

In sum, Healy has failed to state a claim for First Amendment retaliation, nor any other cognizable theory of a First Amendment violation. Therefore, the Court **GRANTS** Defendant's motion for summary judgment on that claim.

---

[15] Nor does *Logsdon* rebut Defendants' argument that Healy had no protected right to trespass, thus dooming her claim on the first step. Though the plaintiff in *Logsdon* was arrested for trespass, and he indisputably entered the clinic property, the Sixth Circuit observed that the criminal trespass conviction was reversed on a state appellate finding that he had privilege to enter the property to retrieve his sign. 492 F.3d at 338. Thus, while the *Logsdon* court allowed the First Amendment claim to proceed, it did so upon the distinguishing fact of the plaintiff's legally-established privilege to be on the property.

### III.   Healy's Equal Protection Claim.

Defendants seek summary judgment on Healy's § 1983 claim based on the Equal Protection clause of the Fourteenth Amendment. Under the Equal Protection Clause, government actors may not "make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Defendants argue that Healy, who is African-American, has failed to identify any similarly-situated comparators who received better treatment. Healy does not address this claim, nor Defendants' argument in opposition, in any of the briefing submitted. Her Amended Complaint states that demonstrators at the Surgical Center "would regularly observe people walking across the grassy lot without incident and undisturbed by PP Surgical Center security guards [or] the security guard would simply inform them that they were not allowed on that property... but would not otherwise interfere with or arrest them." Doc. 53, # 281. But, as Defendants point out, Healy has not provided any evidence of the characteristics of other individuals traversing the grassy lot, thus omitting a necessary component of her Equal Protection claim. The Court cannot permit Healy to argue to a jury that her treatment was discriminatory in the absence of any evidence distinguishing Healy from those who allegedly traversed the grassy area without incident. Since Healy has failed to fulfill her burden on this claim, the Court **GRANTS** Defendants' motion for summary judgment as to the same.

[22]

## CONCLUSION

The Court finds that Defendants are entitled to summary judgment. As a matter of law, Healy cannot prevail on her claims under the First Amendment and the Equal Protection Clause. Neither can she prevail on her *Monell* theory of municipal liability for the alleged constitutional violations. Finally, while factual disputes prevent determination of whether Healy's Fourth Amendment rights were violated, the Court finds that Officer Chung is entitled to qualified immunity. Therefore, Defendants' motion for summary judgment is **GRANTED**, and Plaintiff's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED**.


s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: October 31, 2025

[23]